**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X

In Re:                                                                              CHAPTER 13

Luigi Scotto-DiClemente,                                         Case No.: 11-28230 (MBK)


                                        Debtor.
---------------------------------------------------------X
APPEARANCES:

Jacqueline Rocci, Esq
340 Main Street
Metuchen, NJ 08840
Attorney for Debtor

Elizabeth K. Holdren, Esq.
Hill Wallack LLP
202 Carnegie Center
Princeton, NJ 08543-5226
Attorneys for Creditor, Amboy Bank F/K/A Amboy National Banks


**MICHAEL B. KAPLAN, U.S.B.J.**

**<u>MEMORANDUM DECISION</u>**

I.     INTRODUCTION

This matter comes before the Court upon the motion (the "Motion") of Amboy Bank F/K/A Amboy National Banks (the "Creditor" or "Amboy") to dismiss Luigi Scotto-DiClemente's (the "Debtor") Chapter 13 case. The Court has reviewed the pleadings submitted and heard oral argument on October 11, 2011. For the reasons which follow, the Court finds that the Debtor is not entitled to be a debtor under Chapter 13 and therefore grants Amboy's Motion.

II.    PROCEDURAL HISTORY/FACTS

On December 15, 2003, the Debtor executed and delivered a Note to Amboy in the principal amount of $180,000. As security for the loan, and in connection with the Note, on December 15, 2003, the Debtor executed and delivered to Amboy a mortgage (the "First Mortgage") on the Debtor's primary residence located at 23 Snyder Ave., Keansburg New Jersey (the "Property"). The First Mortgage was subsequently recorded with the Clerk of the Monmouth County on February 11, 2004. The Debtor defaulted on the First Mortgage by failing to pay the August 2009 monthly installment and each payment due thereafter.

On April 27, 2005, the Debtor executed and delivered a Choice Equity Line of Credit to Amboy, in the principal amount of $75,000 (the "Equity Line"). As security for the Equity Line, on April 27, 2005, the Debtor executed and delivered to Amboy a second mortgage (the "Second Mortgage") on the Property, which was recorded with the Clerk of Monmouth County on June 1, 2005. The Debtor defaulted on the Second Mortgage by failing to pay the August 2009 installment and each payment due thereafter. With respect to the Equity Line, the Debtor requested Amboy convert the outstanding balance to a 15 year fixed rate loan.

On October 9, 2008, A&T, Inc., d/b/a Romer's Restaurant & Pizza ("Romer's") executed and delivered to Amboy an Installment Note, in the principal amount of $363,279.57. In connection with the Installment Note, on October 9, 2008, the Debtor executed and delivered to Amboy a General and Continuing Guarantee. In connection with this Installment Note, the Debtor executed and delivered a third mortgage (the "Third Mortgage") to Amboy on the Property, which was recorded with the Clerk of Monmouth County on October 29, 2008. The Debtor defaulted under his Guarantee in connection with the Third Mortgage by failing to pay the August 2009 monthly installment and each payment due thereafter.

On August 19, 2010, the Debtor filed a Chapter 7 Bankruptcy Petition with the United States Bankruptcy Court for the District of New Jersey under Case No. 10-35480. On December 10, 2010, the Debtor received a Chapter 7 Discharge. The Debtor filed the within Chapter 13 petition 6 months later on June 14, 2011, under Case No. 11-28230. The Debtor is ineligible to receive a discharge in the pending case. The Debtor's schedules reflect that the Property is subject to Amboy's First, Second, and Third Mortgages. The only other secured creditor listed on the Debtor's schedules is Credit Acceptance, with respect to a 2002 Jeep Liberty. The Debtor's Chapter 13 Plan treats Credit Acceptance as unaffected, and Debtor's Schedule D indicates that the Debtor pledges to continue to make regular payments to Credit Acceptance outside of the Plan. The Debtor also lists two unsecured creditors with claims totaling $1,482.00. The Plan proposes to cure the arrears owed to Amboy on the First Mortgage and strip off the Second and Third Mortgages, paying a *pro rata* distribution from any remaining funds to unsecured creditors.

Amboy filed the within motion to dismiss the Debtor's Chapter 13 case for cause, originally returnable for September 27, 2011. Oral Argument was heard on October 11, 2011, and the Court reserved its decision.

### III.   JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

### IV.   DISCUSSION

#### A. Motion to Dismiss Under 11 U.S.C. § 1307 (c) for Cause

##### 1. 11 U.S.C. § 1307 (c) Standard

Under 11 U.S.C. § 1307(c), a Chapter 13 petition may be dismissed "for cause." In re Lilley, 91 F.3d 491, 496 (3d Cir. Pa. 1996). Even though § 1307(c) lists eleven grounds for dismissal, courts are not confined to the grounds enumerated under this section, and may consider the debtor's failure to comply with other sections of the Code in deciding whether there is "cause" for a dismissal of a Chapter 13 case. Lilley, 91 F.3d at 494 ("It is an established rule of construction for bankruptcy statutes that 'includes' and 'including' are not limiting." (citing 11 U.S.C. § 101(3). See, e.g., P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 77 n.7, 62 L. Ed. 2d 225, 100

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

S. Ct. 328 (1979) (noting that "including" indicates that enumerated items are part of larger group)); see also In re Orawsky, 387 B.R. 128, 136-137 (Bankr. E.D. Pa. 2008); see also Grandstaff v. Casey (In re Casey), 428 B.R. 519, 522 (Bankr. S.D. Cal. 2010) ("Section 1307(c) of Title 11, United States Code, provides a non-exhaustive list of grounds for dismissal for cause, including "unreasonable delay by the debtor that is prejudicial to creditors"").

Amboy contends that the Debtor filed the within Chapter 13 case in bad faith. Specifically, Amboy takes issue with the Debtor's proposal to cure the arrears due to Amboy on the First Mortgage, while striping-off the Second and Third Mortgage liens on the Property. In this regard, Amboy argues that the Debtor's filing of the within case only six months after having received a Chapter 7 discharge to avoid Amboy's Second and Third Mortgages, evidences the Debtor's bad faith. The Third Circuit has recognized that filing a Chapter 13 case in bad faith is sufficient cause for dismissal under § 1307(c). In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996); see also In re Roth, 2010 Bankr. LEXIS 1939, 3-5 (Bankr. D.N.J. June 14, 2010)[2]. Similarly, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments to the Bankruptcy Code explicitly indicate that a Chapter 13 plan must be filed in good faith. In re Roth, 2010 Bankr. LEXIS 1939, *3-5 (Bankr. D.N.J. June 14, 2010) (citing 11 U.S.C § 1325(a)(7)). Once a creditor alleges that a plan was filed in bad faith, the burden shifts to the debtor to prove by a preponderance of the evidence that the bankruptcy petition was filed in good faith. In re Tamecki, 229 F.3d 205, 207 (3d Cir. 2000).

---

[2] The Third Circuit in In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996), joined the Seventh, Ninth and Tenth Circuits in finding that a lack of good faith in filing a petition is sufficient cause for dismissal under § 1307(c). See, In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994); In re Gier, 986 F.2d 1326, 1329-30 (10th Cir. 1993).

As there is no clear definition in the Code as to what constitutes good faith, bankruptcy courts must look at the totality of the circumstances when making such a determination. In re Goddard, 212 B.R 233, 238 (D.N.J. 1997). Factors the court may consider are:

> (1) the nature of the debt, (2) the timing of the petition, (3) how the debt arose, (4) the debtor's motivation in filing his petition, (5) how the debtor's actions affected creditors, (6) the debtor's treatment of creditors both before and after the petition was filed, and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.

In re Myers, 491 F.3d 120, 125 (3d Cir. 2007) (citing In re Lilley, 91 F.3d at 496). The Court may take other relevant aspects into consideration, as no one factor is controlling. In re Goddard, 212 B.R 233, 238 (D.N.J. 1997). Additionally, actual fraud need not be proven to support a finding of bad faith. In re Dye, 346 B.R. 669, 671 (D. Del. 2006). In order to assess whether the Debtor filed the within Chapter 13 case in good faith, the Court must first address whether the Debtor can use a "Chapter 20" to strip-off residential mortgage liens.

### B. "Stripping Off" Liens Under 11 U.S.C. § 1325(a)(5)

#### 1. Lien-Stripping limitations under Chapter 13

In Johnson v. Home State Bank, 501 U.S. 78, 84 (1991), the Supreme Court held that a mortgage lien for which a debtor previously obtained a discharge of personal liability under a Chapter 7, remains a claim that can be treated under a Chapter 13 plan. Johnson v. Home State Bank, 501 U.S. at 84. Following the decision in Johnson, the Supreme Court considered in Nobelman v. American Sav. Bank, 508 U.S. 324 (1993), whether Code sections 506(a) and 1322(b)(2) granted a Chapter 13 debtor the ability to strip-down partially unsecured residential mortgage liens. See generally Nobelman, 508 U.S. 324 (1993). Under 11 U.S.C. § 1322(b)(2), Chapter 13 debtors have express legislative authority to modify the rights of the holders of

6

consensual mortgage claims. See 11 U.S.C. § 1322(b)(2). In light of this grant of authority, the debtors in Nobelman sought to strip-down a partially secured mortgage lien by utilizing § 506(a) to bifurcate the bank's secured proof of claim, consistent with the collateral's value, and then applying § 1322(b)(2) to void the unsecured portion of the lien. 508 U.S. at 326. Relying on § 506(a), the debtors' Chapter 13 plan proposed that the debtors would make payments only up to the amount of the secured portion of the mortgage lien pegged to the value of the underlying collateral, with remainder of the bank's claim to be treated as unsecured. Id. The bank and the Chapter 13 trustee objected to the debtors' plan on the basis that the bifurcation of the bank's claim modified the bank's rights in violation of 11 U.S.C. § 1322(b)(2). Id. at 326-27. The debtors argued that the protection afforded by § 1322(b)(2) applied only to the extent of the mortgagee's secured claim and that the court must first utilize § 506(a) to fix the amount of the mortgagee's secured claim. Nobelman, 508 U.S. at 328. The debtors asserted that because their plan proposed to pay the "secured" portion of the bank's claim, the plan did not alter the bank's rights as a the holder of the claim and § 1322(b)(2) permitted unconditional modification of the bank's remaining "unsecured claim." Id.

The Supreme Court disagreed with the debtors' interpretation of § 1322(b)(2)'s phrase "a claim secured only by a security interest in real property that is the debtor's principal residence," as referring to both the residential mortgage holder's secured and unsecured claim, and instead found that it would be impossible to decrease the amount of the bank's outstanding mortgage principal without modifying its contract rights as to monthly payment amounts, interest rates or any further repayment terms. Id. at 331-32. For that reason, the Court found that the anti-modification provision in § 1322(b)(2) would protect the bank's rights if there were some value remaining in the debtor's residence to which the subject lien could attach. Id. at 332. Thus,

7

the Court held that a Chapter 13 debtor may not bifurcate a partially secured mortgage claim secured by solely by the debtor's primary residence and strip-down the lien in a Chapter 13 plan, as the protection afforded by § 1322(b)(2) applies to both the secured and unsecured portion of a creditor's claim. Id.

### 2. Lien-Stripping Entirely Unsecured Residential Mortgage Liens in Chapter 13

Under Nobelman, courts must first employ § 506(a) to determine whether a claim is secured or unsecured. The Nobelman Court, however, left unanswered the question of whether § 1322(b)(2) bars a Chapter 13 debtor from stripping-off wholly unsecured consensual mortgage liens secured by the debtor's principal residence under § 506(a). The Third Circuit is among the majority of Circuit Courts which have held that a Chapter 13 plan may modify the rights of a holder of a wholly unsecured mortgage against the debtor's primary residence. McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 615 (3d Cir. Pa. 2000), *cert. denied*, 531 U.S. 822 (2000)[3]. These courts have collectively applied Nobelman to prevent creditors from invoking the protection of § 1322(b)(2) in cases where a creditor holds a wholly unsecured junior residential mortgage.

---

[3] See also Pond v. Farm Specialist Realty (In re Pond), 252 F.3d 122, 126 (2d Cir. N.Y. 2001); see also Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277, 280 (5th Cir. Tex. 2000); see also Lane v. W. Interstate Bancorp (in Re Lane), 280 F.3d 663, 665 (6th Cir. Tenn. 2002); Zimmer v. PSB Lending Corp. (in Re Zimmer), 313 F.3d 1220, 1221 (9th Cir. Cal. 2002); see also Tanner v. FirstPlus Fin., Inc. (In re Tanner), 217 F.3d 1357, 1359 (11th Cir. Fla. 2000); see also Domestic Bank v. Mann (In re Mann), 249 B.R. 831, 840 (B.A.P. 1st Cir. 2000); see also Griffey v. U.S. Bank (In re Griffey), 335 B.R. 166, 170 (B.A.P. 10th Cir. 2005); see also Waters V.money Store (in Re Waters), 276 B.R. 879, 882 (Bankr. N.D. Ill. 2002); see also In re King, 290 B.R. 641, 646 (Bankr. C.D. Ill. 2003); Lam v. Investors Thrift (In re Lam), 211 B.R. 36, 41 (B.A.P. 9th Cir. 1997).

### 3. Post BAPCPA: Striping-Off Wholly Unsecured Residential under a "Chapter 20"[4]

Under the 2005 BAPCPA amendments, new § 1328(f)(1) prohibits a debtor from obtaining a Chapter 13 discharge if the debtor previously received a discharge filed under Chapter 7, 11 or 12, during the 4 year period preceding the date upon which the order for relief arises in the Chapter 13 case. 11 U.S.C. § 1328(f)(1).  BAPCPA also amended 11 U.S.C. § 1325(a)(5) relative to the treatment of secured claims under a Chapter 13 plan.  Under § 1325(a)(5), confirmation will not be granted unless each allowed secured claim within the plan satisfies one of three requirements: (1) the holder of the claim accepts the Plan; (2) the debtor surrenders the property securing the claim to the claim holder; or (3) if neither (1) or (2) are satisfied, the debtor must then comply with the "lien retention" provisions of § 1325(a)(5)(B)(i)(I)(aa) or § 1325(a)(5)(B)(i)(I)(bb) to obtain plan confirmation. See 11 U.S.C. §§ 1325(a)(5)(A), (C),(B)(i)(I)(aa), (B)(i)(I)(bb), & (B)(ii).  The "lien retention" provisions require that the holder of an allowed secured claim retain the lien securing such claim until the earlier of (a) payment of the underlying debt determined under non-bankruptcy law or (b) a discharge being granted under § 1328, with the value of payments under the plan to not be less than the allowed amount of such claim. See §§ 1325(a)(5)(B)(i)(I)(aa), (B)(i)(I)(bb), (B)(ii).

Judging by the number of courts writing on this issue, it is evident across the country that courts are grappling with the issue of whether § 1328(f)(1) and amended § 1325(a)(5) allow a debtor to strip-off a wholly unsecured residential mortgage lien under a Chapter 13 plan, less than 4 years after the debtor has received a discharge under Chapter 7.  At the heart of the debate lies the fact that the "lien retention" options are unavailable in a "no discharge" Chapter 13 case.

---

[4] In the years after Johnson, supra, the use of a "Chapter 20" (a Chapter 13 filing subsequent to a discharge received under a Chapter 7) has become a mainstay of the consumer debtor practice.  The use of a Chapter 20, where the aim of the Chapter 13 case is to address a mortgage arrearage, has become common place.

9

In a recent decision, In re Gloster, 2011 Bankr. LEXIS 4156 (Bankr. D.N.J. Oct. 13, 2011), my colleague Judge Novalyn Winfield references In re Jennings, 454 B.R. 252, 256 (Bankr. N.D. Ga. 2011), which identified three approaches adopted by courts in deciding whether a Chapter 20 case permits stripping-off a wholly unsecured junior mortgage lien. Gloster, 2011 Bankr. LEXIS 4156, *7 (citing In re Jennings, 454 B.R. at 256). The first approach courts take is that "[C]hapter 20 lien stripping is impermissible because it amounts to a de facto discharge."[5] Id. (citing 454 B.R. at 256). Courts that utilize the second approach allow Chapter 20 lien stripping; "however after plan consummation, without a discharge, the parties' pre-bankruptcy rights are reinstated."[6] Id. (citing Id. at 256-57). Courts adopting the third approach "allow [C]hapter 20 lien stripping [simply] because nothing in the Bankruptcy Code prevents it."[7] Id. (citing Id. at 257).

### 4. Analysis of Lien-Stripping Under §§ 1328(f)(1) and 1325(a)(5)

A debtor's Chapter 7 discharge does not deprive a mortgagee of its right to collect on its debt *in rem*. 11 U.S.C. § 524(a)(2) ("A discharge . . . operates as an injunction against the

---

[5] In re Gerardin, 447 B.R. 342 (Bankr. S.D. Fla. 2011); In re Fenn, 428 B.R. 494 (Bankr. N.D. Ill. 2010); In re Jarvis, 390 B.R. 600 (Bankr. C.D. Ill. 2008); In re Mendoza, No. 09-22395 HRT, 2010 WL 736834 (Bankr. D. Colo Jan. 21, 2010); Blosser v. KLC Fin., Inc. (In re Blosser), No. 08-2353, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009); In re Winitzky, No. 1:08-bk-19337-MT, 2009 Bankr. LEXIS 2430 (May 7, 2009); Lindskog v. M & I Bank FSB (In re Lindskog), 451 B.R. 863 (Bankr. E.D. Wis. Apr. 13, 2011); Bank of Prairie v. Picht (In re Picht), 428 B.R. 885 (10th Cir. BAP 2010); In re Collins, No. 10-32098-tmb13, 2010 WL 5173840 (Bankr. D. Or. Dec. 15, 2010); Erdmann v. Charter One Bank (In re Erdmann), 446 B.R. 861 (Bankr. N.D. Ill. Mar. 10, 2011).

[6] Grandstaff v. Casey (In re Casey), 428 B.R. 519 (Bankr. S.D. Cal. 2010); In re Trugillo, No. 6:10-bk-02615-ABB, 2010 WL 4669095 (Bankr. M.D. Fla. Nov. 10, 2010); In re Colbourne, No. 6:10-bk-00983-ABB, 2010 WL 4485508 (Bankr. M.D. Fla. Nov. 8), *amended by* 2010 WL 7376291 (Bankr. M.D. Fla. Nov. 10, 2010); Hart v. San Diego Credit Union, 449 B.R. 783 (S.D. Cal. 2010); In re Jazo, No. 09-16609-JM13, 2010 WL 3947303 (Bankr. S.D. Cal. Sept. 28, 2010); In re Frazier, 448 B.R. 803 (Bankr. E.D. Cal. 2011); Davis v. T.D. Bank (In re Davis), 447 B.R. 738 (Bankr. D. Md. 2011).

[7] In re Grignon, No. 10-34196-tmb13 2010 WL 5067440 (Bankr. D.Or. Dec. 7, 2010); In re Hill, 440 B.R. 176 (Bankr. S.D. Cal. 2010); In re Fair, 450 B.R. 853 (E.D.Wis. 2011); In re Waterman, 447 B.R. 324 (Bankr. D. Colo. 2011); In re Okosisi, 451 B.R. 90 (Bankr. D.Nev. 2011).

commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor"); see also Johnson v. Home State Bank, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim - namely, an action against the debtor *in personam* - while leaving intact another - namely, an action against the debtor *in rem*."); see also Fisette v. Keller (In re Fisette), 455 B.R. 177 (B.A.P. 8th Cir. 2011). The issue which surfaces is whether a Chapter 20 debtor, notwithstanding ineligibility for a discharge under § 1328(f)(1), may still seek to modify a mortgagee's lien that remains attached to the debtor's property.

As noted, a number of courts have reasoned that a debtor is restrained from permanently striping-off a lien on his principal residence if he is ineligible for a Chapter 13 discharge. See Orkwis v. MERS (In re Orkwis), 2011 Bankr. LEXIS 3580 (Bankr. E.D.N.Y. Sept. 19, 2011); see also, e.g., In re Victorio, B.R., 2011 Bankr. LEXIS 2704, 2011 WL 2746054 (Bankr. S.D. Cal. 2011); In re Gerardin, 447 B.R. 342 (Bankr. S.D. Fla. 2011); In re Fenn, 428 B.R. 494 (Bankr. N.D. Ill. 2010); In re Mendoza, No. 09-22395 HRT, 2010 Bankr. LEXIS 664, 2010 WL 736834 (Bankr. D. Col. Jan. 21, 2010); In re Jarvis, 390 B.R. 600, 604-06 (Bankr. C.D. Ill. 2008). In contrast, several courts have determined that a debtor's eligibility for a discharge in a Chapter 13 does not impact lien avoidance. See, e.g., Jennings, B.R., 2011 Bankr. LEXIS 2693, 2011 WL 2909888 (Bankr. N.D. Ga. July 11, 2011); Okosisi, 451 B.R. 90; Fair, 450 B.R. 853 (E.D. Wis. 2011); In re Waterman, 447 B.R. 324 (Bankr. D. Colo. 2011); In re Tran, 431 B.R. 230 (Bankr. N.D. Cal. 2010); In re Hill, 440 B.R. 176 (Bankr. S.D. Cal. 2010). This Court follows the latter approach and holds that a debtor's strip-off of a wholly unsecured mortgage lien on his principal residence is not contingent upon the debtor's receipt of a Chapter 13

11

discharge, and instead becomes effective upon completion of the debtor's obligations under his plan. See In re Fisette, 455 B.R. 177.

In saying this, this Court has strained to locate a section in the Bankruptcy Code that expressly conditions a debtor's ability to modify a creditor's wholly unsecured lien under § 1322(b)(2) upon the debtor's eligibility for a discharge under Chapter 13. See, e.g., Tran, 431 B.R. at 235 (the court cited various Bankruptcy Code provisions and surmised that the Code does not "preclude[] a debtor that is not eligible for a discharge from filing a [C]hapter 13 case, obtaining confirmation of a [C]hapter 13 plan, and with the exception of the right to a discharge, from enjoying all the rights of a [C]hapter 13 debtor, including the right to strip off liens."); see also, Waterman, 447 B.R. at 328-29 (concluding that the court's analysis in Tran, and similar cases allowing strip offs in no-discharge Chapter 13 cases, to be "persuasive and compelling"). For example, § 1325 does not require eligibility for a discharge as a prerequisite for confirmation of a plan. Tran, 431 B.R. at 235 ("[A]lthough § 1325(a) and (b) sets forth numerous requirements for confirmation of a [C]hapter 13 plan, nothing in § 1325 conditions confirmation on the debtor being eligible for a discharge.").

In support of its position, Amboy cites to § 1325(a)(5) which states in relevant part that a Chapter 13 plan will be confirmed if:

> (5) with respect to each allowed secured claim provided for by the plan—
>
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that –
> (I) the holder of such claim retain the lien securing such claim until the earlier of—
>   (aa) the payment of the underlying debt . . . ; or
>   (bb) discharge under section 1328. . .; and
>
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law. . . or . . .

12

(C) the debtor surrenders the property securing such claim to such holder.

11 U.S.C. § 1325(a)(5). Yet, this argument ignores that § 1325(a)(5)(B)(i)(I)(bb) does not apply to wholly unsecured liens attached to the debtor's principal residence. Hill, 440 B.R. at 183 ("Section 1325(a)(5) has no applicability to unsecured claims. . ."); see also Fisette, 455 B.R. 177. The plain language of § 1325(a)(5) dictates that the requirements under the section apply only to an "allowed secured claim," i.e., where the court can find some value in the subject collateral to support the lienholder's claim. See id.; see also Connecticut Nat'l. Bank v. Germain, 503 U.S. 249 (1992) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). "Where the collateral retains no value to support the lienholder's claim . . . a creditor does not have a secured claim and the requirements of § 1325(a)(5) do not apply." Fisette, 455 B.R. 177 (citing See In re Frazier, 448 B.R. 803, 811 (Bankr. E.D. Cal. 2011) ("A creditor entitled to assert the provisions of 11 U.S.C. § 1325(a)(5) must be the holder of an "allowed secured claim." A "secured claim" is a term of art under the Bankruptcy Code, . . . and is the secured claim determined pursuant to § 506(a).").

To summarize, Congress has yet to prohibit expressly a debtor in a nondischargeable Chapter 13 case from stripping-off a wholly unsecured junior lien under § 506 of the Code. As stated by the Tran Court:

> the Bankruptcy Code does not condition a chapter 13 debtor's right to strip off a wholly unsecured junior lien on the debtor's eligibility for a discharge. Rather, such right is conditioned on the debtor's obtaining confirmation of, and performing under, a chapter 13 plan that meets all of the statutory requirements. At the same time, the court emphasizes that if a chapter 13 case is filed primarily to avoid a junior lien in an effort to skirt the Supreme Court's holding in Dewsnup, then such filing would not be in good faith, and such a case should be dismissed.

Tran, 431 B.R. at 235. As such, this Court is persuaded by the analysis in Tran, Hill, Gloster, and Fisette, which held that the Supreme Court's decision in Johnson, and applicable rules of

statutory construction, accord a Chapter 13 debtor a right to avoid a wholly unsecured junior lien under these circumstances.

In the case at bar, the plain language of § 1325(a)(5) compels this court to find that such relief is available to the Debtor, if undertaken in good faith. The Debtor's Chapter 7 case discharged his *in personam* liability to Amboy Bank for the three mortgage obligations. However, the Chapter 7 discharge does not deprive Amboy of its right to pursue its *in rem* claims. The Supreme Court in Johnson clarified this point by stating that the phrase "claim against the debtor," under § 102(2), includes a claim against property of the debtor.[8] Thus, Amboy retained *in rem* claims enforceable against the Debtor's property by way of the First, Second, and Third Mortgages, despite the Debtor's Chapter 7 discharge.

Looking to § 506(a) to determine whether Amboy's *in rem* claims are secured or unsecured, the Court finds that Amboy holds two junior liens that are wholly unsecured and subject to avoidance. The Debtor's schedules reveal that the Debtor's Property does not possess enough equity to support the Second and Third Mortgages, effectively rendering them without value. As previously stated, "[w]here the collateral retains no value to support the lienholder's claim . . . a creditor does not have a secured claim and the requirements of § 1325(a)(5) do not apply." Fisette, 455 B.R. 177. "Therefore, if the Debtor's Plan is otherwise confirmable and the Debtor completes his plan, the lien may be "stripped" consistent with 11 U.S.C. § 506." Waterman, 447 B.R. at 329.

---

[8] "[T]he Court must allow the claim if it is enforceable against either the debtor or his property. Thus, § 502(b)(1) contemplates circumstances in which a 'claim,' like the mortgage lien that passes through a Chapter 7 proceeding, may consist of nothing more than an obligation enforceable against the debtor's property. Similarly, § 102(2) establishes, as a '[r]ul[e] of construction' that the phrase 'claim against the debtor' includes a claim against property of the debtor. A fair reading of § 102(2) is that a creditor who . . . has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for the purposes of the code." Johnson, 501 U.S. at 83; see also 11 U.S.C. § 522(c)(2).

14

For the reasons explained, this Court joins those courts which permit lien stripping in a Chapter 20 scenario, as long as the Chapter 13 case is filed in good faith and the plan is completed to fruition. However, this case requires additional scrutiny into the Debtor's good faith, and whether the amount of *in rem* claims place the Debtor above the dollar amount limitations included in 11 U.S.C. § 109(e).

### 5. Good Faith Under § 1325(a)(3)

This Court acknowledges that lien-stripping in a Chapter 20 case imbues a benefit upon the debtor that is not normally provided under the Code. Accordingly, this Court agrees with Judge Winfield's assessment in Gloster, that it is not sufficient for a Chapter 20 debtor to simply file his Chapter 13 case with the anticipation that there will be no objection to his plan. Therefore, this Court likewise requires a debtor to establish, by way of either testimony or an affidavit, the circumstances that prompted the filing of the Chapter 13 petition (in other words, why the Debtor did not file initially a Chapter 13 case and seek to modify the subject liens thereunder), so as to judge whether the effort was undertaken in good faith.

Under § 1325(a)(3), the Court has an independent duty to review the issue of good faith. In re Hill, 440 B.R. 176, 184-85 (Bankr. S.D. Cal. 2010). "(B)ankruptcy courts have the authority — indeed, the obligation — to direct a debtor to conform his plan to the requirements of [the Bankruptcy Code]." Hill, 440 B.R. at 184-8 (citing United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1381, 176 L. Ed. 2d 158 (U.S. 2010); see also In re Warren, 89 B.R. 87, 90 (9th Cir. B.A.P. 1988)). In addition to the seven factors previously listed under Lilley, courts have considered whether (1) "the debtor[] . . . [has] a need for bankruptcy other than lien avoidance; (2) whether [the] debtor[] acted equitably in proposing the plan; (3) whether [the] debtor[] . . . [is] devoting . . . [his] income to the plan; and (4) whether the debtor[] used serial

15

filings to avoid paying their creditors." <u>Okosisi</u>, 451 B.R. at 102–04.  In <u>Tran</u>, the court found that the debtor attempted to "unfairly manipulate the Bankruptcy Code to skirt the Supreme Court's holding in <u>Dewsnup</u>"[9] by filing the Chapter 13 case for the sole purpose of lien avoidance. <u>Hill</u>, 440 B.R. 176, 184-85 (citing <u>Tran</u>, 431 B.R. at 238; <u>see also</u> <u>Warren</u>, 89 B.R. at 95 (Court holding that Chapter 13 plans "that are in essence veiled chapter 7 cases" should not be confirmed).

On August 19, 2010, the Debtor filed a Chapter 7 case and received a discharge on December 10, 2010.  Six months later on June 14, 2011, the Debtor filed the within Chapter 13 case.  In addition to listing the Property as encumbered by Amboy's First, Second, and Third Mortgages, the Debtor's Schedules list Credit Acceptance and its claim with respect to a 2002 Jeep Liberty, as the only other secured creditor in the Plan.  The proposed Chapter 13 Plan also indicates that Credit Acceptance is unaffected by the Plan, and Debtor's Schedule D states that the Debtor will continue to make regular payments to Credit Acceptance outside the Plan.  The Debtor lists only two other creditors, both unsecured, with claims totaling $1,482.00, due to the discharge obtained six months prior to the Chapter 13 filing.

While the Debtor's certification and Chapter 13 Plan do not indicate any substantial change in circumstances, the Court finds that the Debtor's proposed treatment of the First Mortgage under the plan—to cure the $38,588.06 in arrears due and owing from August 25, 2009 through June 14, 2011—constitutes a meritorious reorganizational purpose for filing a Chapter 13.  The Court is cognizant that the Debtor's income has actually decreased from $3,033.33 per month, to $2,000.00 per month, since the Chapter 7 discharge.  In an attempt to address the Plan's feasibility, the Debtor includes the following in his current Schedule I as additional income:

---

[9] In <u>Dewsnup v. Timm</u>, 502 U.S. 410 (1992), the Supreme Court held that a Chapter 7 debtor may not strip-down a partially unsecured mortgage lien. <u>Dewsnup</u>, 502 U.S. at 417.  In so ruling, the <u>Dewsnup</u> Court established that 11 U.S.C. § 506(d) does not grant a debtor with separate lien-avoidance authority for allowed claims. 502 U.S. at 417.

16

"Fiancée's Contribution & Child Support" in the amount of $2,428.00 and "Child Support" in the amount of $584.80. The fact that third party sources of income exceed the Debtor's contribution by approximately $1,000.00 certainly raises an issue of feasibility and the specter of bad faith. Nevertheless, the Court is not prepared to dismiss the Debtor's efforts on this basis alone. Rather, the Court will examine the totality of the circumstances surrounding the Chapter 13 filing.

Nothing in the record before the Court suggests that the Debtor filed the within case solely to strip-off Amboy's Second and Third Mortgage Liens. At the time of filing his first bankruptcy case, the Debtor did not qualify for relief under Chapter 13: the Debtor listed the value of the Property at $200,000.00, precluding modification of Amboy's Second Mortgage Lien because there was sufficient equity above Amboy's First Mortgage. The $266,350.00 in unsecured non priority claims, together with the unknown IRS and the New Jersey Division of Taxation unsecured priority claims and the remaining unsecured claims of Amboy (on the Second and Third Mortgages after application of § 506(a)), would have made the Debtor statutorily ineligible to file a Chapter 13 case under § 109(e) of the Code.[10] In other words, if the Debtor had attempted originally to strip-off Amboy's Second and Third Mortgages—on which $86,000.00 was due and owing—the Debtor would have exceeded the debt limitation set forth in § 109(e).

The Court takes no issue with a debtor filing a "no discharge" Chapter 13 with a proper reorganization purpose (e.g., curing mortgage arrears) and then also taking advantage of the

---

[10] Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $ 360,475 and noncontingent, liquidated, secured debts of less than $1,081,400 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $360,475 and noncontingent, liquidated, secured debts of less than $ 1,081,400 may be a debtor under chapter 13 of this title [11 USCS §§ 1301 et seq.]. 11 U.S.C. § 109(e).

Code's permitted tools to strip-off a wholly unsecured junior mortgage lien. What the Court cannot abide are "no discharge" Chapter 13 cases which are filed <u>solely</u> to avoid liens or which undertake to cure recently "fabricated" arrears incurred as part of a stratagem to sidestep the limitations of <u>Dewsnup</u>. An illustration of such a proscribed manipulation would be if a debtor were found to have intentionally ceased paying a first mortgage after the filing of a Chapter 7 (having been current on the mortgage prior to the commencement of the case) in order to create a modest arrearage to be treated in the ensuing Chapter 13 case. That being said, the Court finds that the Debtor in this case is proceeding towards a valid reorganization goal; the submitted plan represents his best efforts to pay creditors, satisfy mortgage arrears and comply with his responsibilities under the Code. See <u>In re Villanueva</u>, 274 B.R. 836, 841 (9th Cir. B.A.P. 2002). Considering all of these factors, the Court finds that the Debtor's Chapter 13 petition was filed in good faith, precluding dismissal of the case.

### C. Debtor Exceeds Jurisdictional Limits Under 11 U.S.C. § 109 (e)

While the Court finds that the Debtor's Chapter 13 petition was filed in good faith, the Court nonetheless must dismiss the Debtor's case for failure to satisfy the requisite qualifications for eligibility as a debtor under a Chapter 13 case. Section 109(e) states, in pertinent part, that:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $ 360,475 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). Debtor contends that the debt ceilings of § 109(e) are not implicated since he received a Chapter 7 discharge of his *in personam* liabilities and thus the unsecured obligations owing Amboy are nonexistent. This argument sidesteps the issue facing the Court as to the treatment of the *in rem* claims for purposes of § 109(e). Section 109(e) offers only two alternative classifications for debt: secured debt or unsecured debt (assuming such debt is

18

noncontingent and liquidated). Neither alternative lends the Debtor much comfort towards confirmation of a plan. As discussed, if the *in rem* claims were regarded as secured, the "lien retention" provisions of § 1325(a)(5) bar the proposed "strip-off" of Amboy's liens. On the other hand, if the *in rem* claims are treated as unsecured, the Debtor must overcome § 109(e) restraints.

Amboy's amended proof of claim in the current case reflects a total secured claim in the amount of $761,380.80, with arrears totaling $540,854.97 as of the petition date. The breakdown of the $761,380.80 is as follows: (1) $191,447.64 due in connection with Amboy's First Mortgage; (2) $86,095.87 due with on Amboy's Second Mortgage; (3) $478,141.87 due with respect to Amboy's Third Mortgage, in addition to pre-petition legal fees and costs in the amount of $5,695.42.

Section 109(e) speaks in terms of "debts" which is defined under 11 U.S.C. § 101(12) as "liability on a claim." 11 U.S.C. § 101(5) defines "claim" to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A) & (B). As discussed above, the US Supreme Court in <u>Johnson</u>, <u>supra</u>, reaffirmed that the undischarged *in rem* claim remaining after a Chapter 7 discharge is subject to the treatment in a subsequent Chapter 13 case. As a result, the Court must also include the unsecured *in rem* claim when determining a debtor's eligibility for relief under § 109(e). Taking into account the Court's ruling that Amboy's Second and Third Mortgages are wholly unsecured, the Debtor at the time of filing the Chapter 13 case owed in excess of $564,237.74 in unsecured debt—more than $200,000.00 over the allowed statutory limit under 11 U.S.C. § 109(e).

Therefore, the Debtor's failure to qualify for relief under Chapter 13 of the Code compels the Court to dismiss the Debtor's case under § 1307(c).

### V. CONCLUSION

The Court finds sufficient grounds to dismiss the Debtor's Chapter 13 case for cause under 11 U.S.C. § 1307(c). While the within case was filed in good faith, the Debtor does not qualify for relief under Chapter 13, having unsecured debts that exceed the limits set forth under 11 U.S.C. § 109(e). Accordingly, the Court hereby Grants Amboy's Motion and the within case will be dismissed.

Dated: November 18, 2011

Honorable Michael B. Kaplan
United States Bankruptcy Judge