FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X

In Re:                                                    CHAPTER 13

Luigi Scotto-DiClemente,                                  Case No.: 11-28230 (MBK)


                          Debtor.
---------------------------------------------------------X
APPEARANCES:

Jacqueline Rocci, Esq
340 Main Street
Metuchen, NJ 08840
Attorney for Debtor

Elizabeth K. Holdren, Esq.
Hill Wallack LLP
202 Carnegie Center
Princeton, NJ 08543-5226
Attorneys for Creditor, Amboy Bank F/K/A Amboy National Banks


**MICHAEL B. KAPLAN, U.S.B.J.**

**MEMORANDUM DECISION**

## I.  INTRODUCTION

This matter comes before the Court upon the motion (the "Motion") of Luigi Scotto-DiClemente's (the "Debtor") for Reconsideration of the Order of Dismissal of his Chapter 13 case entered on November 18, 2011, pursuant to 11 U.S.C. § 109(e).  The circumstances underlying this case were set forth in the Court's November 18, 2011 opinion, In re Scotto-DiClemente, 2011 Bankr. LEXIS 4461 (Bankr. D.N.J. Nov. 18, 2011).  The Court incorporates by reference the relevant facts from that decision.  The Debtor contends that the Court committed a clear error of law by ruling that the *in rem* liabilities which survived the Debtor's prior Chapter 7 discharge should be included in the § 109(e) tabulation of unsecured debt.  The Court has reviewed the pleadings submitted and heard oral argument on January 10, 2011.  For the reasons which follow, the Debtor's Motion for Reconsideration is denied.

## II.  JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (K), and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.    DISCUSSION

**A.  Motion for Reconsideration to Correct Clear Error of Law**

**1. Federal Rule of Civil Procedure 59(e) Reconsideration Standard, Applicable to Bankruptcy Cases pursuant to Fed. R. Bankr. P. 9023**

A motion for reconsideration is governed by Federal Rule 59(e) and is applicable to Bankruptcy cases under Rule 9023 of the Federal Rules of Bankruptcy Procedure. See, Prudential Ins. Co. v. Farley (In re Farley), 158 B.R. 48, 52 (E.D. Pa. 1993); see also, McDowell Oil Serv., Inc. v. Interstate fire & Cas. Co., 817 F. Supp. 538, 541 (M.D. Pa. 1993).  Pursuant to Federal Rule 59(e), a party can move to alter or amend a judgment within ten days [now fourteen] of its entry. McDowell Oil Serv., Inc., 817 F. Supp. at 541.  The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." Walzer v. Muriel Siebert & Co., Inc., 2010 U.S. Dist. LEXIS 115245, *24 (D.N.J. 2010) (citing North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

A court should "only entertain a motion to reconsider, if the alleged overlooked controlling decision of law or dispositive factual matter was of a nature that, if considered by the Court, might reasonably have resulted in a different conclusion." Davis v. Spirit of N.J., 2000 U.S. Dist. LEXIS 19903, *5 (D.N.J. 2000).  Nonetheless, "[i]n exercising its discretion in ruling on a motion for reargument or reconsideration, the Court must keep an open mind . . . the Court should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct

3

clear legal error." Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1241 (D. Del. 1990). However, "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (quoting Abu-Jamal v. Horn, 2001 U.S. Dist. LEXIS 208, No. CIV. A. 99-5089, 2001 WL 1609761, at *9 (E.D. Pa. December 18, 2011) (citations and internal quotation marks omitted). Lastly, reconsideration of judgment is an extraordinary remedy, and such motions should be granted sparingly. D'Angio v. Borough of Nescopeck, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

After reviewing the submissions, the Court finds that none of the above three grounds for reconsideration has been sufficiently satisfied so as to warrant reconsideration of the Court's prior decision.

### 2. The Court Did Not Commit an Error of Law by Including the *In Rem* Liabilities, Which Survived the Debtor's Prior Chapter 7 Case, in Calculating the Debtor's Unsecured Debt Under 11 U.S.C. § 109(e).

The Debtor asserts that the Court committed a clear error of law by including the amount of Amboy Bank F/K/A Amboy National Banks' (the "Creditor" or "Amboy") surviving post Chapter 7 *in rem* claims when calculating the Debtor's total unsecured debts under 11 U.S.C. § 109(e). Specifically, the Debtor contends that because the Court ruled that the Second and Third Mortgages[2] are wholly unsecured, Amboy's remaining *in rem* claims are unenforceable

---

[2] On April 27, 2005, the Debtor executed and delivered a Choice Equity Line of Credit to Amboy, in the principal amount of $75,000 (the "Equity Line"). As security for the Equity Line, on April 27, 2005, the Debtor executed and delivered to Amboy a second mortgage (the "Second Mortgage") on the Property.  On October 9, 2008, A&T, Inc., d/b/a Romer's Restaurant & Pizza ("Romer's") executed and delivered to Amboy an Installment Note, in the principal amount of $363,279.57.  In connection with the Installment Note, on October 9, 2008, the Debtor executed and delivered to Amboy a General and Continuing Guarantee.  With respect to this Installment Note, the Debtor executed and delivered a third mortgage (the "Third Mortgage") to Amboy on the Property.  At the time of filing his first bankruptcy case, the Debtor listed the value of the subject Property at $200,000.00.   Amboy's amended proof of claim in the current case reflects a total secured claim in the amount of $761,380.80, with arrears totaling $540,854.97 as of the petition date.  The breakdown of the $761,380.80 is as follows:  (1) $191,447.64 due in connection with Amboy's First Mortgage; (2) $86,095.87 due with on Amboy's Second Mortgage; (3) $478,141.87

against the Debtor and must be disallowed under § 502(b)(1).  Accordingly, the Debtor maintains that a disallowed claim cannot be counted as a "debt" pursuant to § 109(e).   The Debtor cites to In re Shenas, 2011 Bankr. LEXIS 2907 (Bankr. N.D. Cal. 2011) and Cavaliere v. Sapir, 208 B.R. 784 (D. Conn. 1997) in support of his position.

In In re Shenas, the debtors' Chapter 13 plan provided for the avoidance of Green Tree Servicing, LLC's ("Green Tree") junior lien because it was wholly unsecured. In re Shenas, 2011 Bankr. LEXIS 2907 at *2.  Green Tree contended that the debtors were ineligible to proceed under Chapter 13 of the Bankruptcy Code because their debts exceeded the $360,475 unsecured debt limit set by 11 U.S.C. § 109. In re Shenas, 2011 Bankr. LEXIS 2907 at *1.  In support of its argument, Green Tree relied upon the decision in Scovis v. Henrichsen, 249 F.3d 975, 982-84 (9th Cir. 2001), which held that "eligibility for chapter 13 should be determined by the debtor's originally filed schedules, and that the undersecured portion of a secured debt is to be counted as unsecured debt for purposes of the § 109(e) calculation." 2011 Bankr. LEXIS 2907 at *2. (citing Scovis, 249 F.3d at 982-84).  Therefore, Green Tree urged the court to apply the holding in Scovis and include its unsecured $392,927 claim in the court's § 109(e) calculation, and thus, hold that the debtors were ineligible for relief under Chapter 13 of the Code. Id.

The court disagreed with Green Tree's application of Scovis, stating that the debtors' prior Chapter 7 discharge extinguished the debtors' personal liability as to the debt owed to Green Tree, rendering the debt unenforceable against the debtors under § 524(a). Id. at 3-4. Therefore, the court concluded---albeit with little explanation---that because Green Tree's claim was unenforceable as to the debtors' personally, it was not an allowable unsecured claim under

---

due with respect to Amboy's Third Mortgage, in addition to pre-petition legal fees and costs in the amount of $5,695.42.  The parties concede that Amboy's Second and Third Mortgages are wholly unsecured and that the Debtor at the time of filing the Chapter 13 case owed in excess of $564,237.74 in unsecured debt.

5

§§ 502(b) and 506(a), and therefore could not be included in the court's § 109(e) eligibility calculation. Id.

As in Shenas, the debtors in Cavaliere contended that Bankruptcy court erred in its § 109(e) eligibility calculation by including debts that were discharged in the debtors' prior Chapter 7 case. Cavaliere, 208 B.R. at 785-786. The court explained that "[a]lthough liens may pass through Chapter 7 undisturbed, a discharge serves to eliminate the debtor's personal liability for the debt." 208 B.R. at 785-786 (citing See Johnson v. Home State Bank, 501 U.S. 78, 84, 115 L. Ed. 2d 66, 111 S. Ct. 2150 (1991)). The court further noted that by the time the Chapter 13 case was commenced, the discharged claims were only enforceable through an *in rem* action against the debtors' property. Id. Therefore, having determined that the claims were wholly unsecured under § 506(a), and thus unenforceable against the debtor personally, the court concluded that the claims were not allowed under § 502(b)(1). Id. As a result, the court held that the discharged claims were disallowed because they were unenforceable against both the debtors (pursuant to the Chapter 7 discharge) and their property (pursuant to the § 506(a) determination), and therefore, should not have been included in the § 109(e) unsecured debt limit calculation. Id.

This Court disagrees respectfully with the Shenas and Cavaliere courts' treatment of surviving *in rem* claims with respect to § 109(e) debt eligibility requirements, and must therefore challenge the Debtor's reliance upon these cases as the legal support for his Motion for Reconsideration. As stated in the Court's prior opinion, Amboy's *in rem* claims must be included in calculating the unsecured debts of the Debtor under § 109(e). Section 109(e) states in full:

> **(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $ 360,475** and noncontingent, liquidated, secured debts of less than $ 1,081,400 or an individual with regular income and such

6

>individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $ 360,475 and noncontingent, liquidated, secured debts of less than $ 1,081,400 **may be a debtor under chapter 13 of this title** [11 USCS §§ 1301 et seq.].

11 U.S.C. § 109(e) (emphasis added). As of the date of the Debtor's filing of the within Chapter 13 Petition on June 14, 2011, the total amount due on Amboy's Second and Third Mortgages were $86,095.87 and $478,141.87 respectively.

The Debtor contends that Amboy has no right to payment on its Second and Third Mortgages because he had obtained a prior Chapter 7 discharge, and thus, such liabilities cannot be considered unsecured "debt" as defined in the Bankruptcy Code. Section 109(e) speaks in terms of "debts," which is defined under 11 U.S.C. § 101(12), as "liability on a claim." 11 U.S.C. § 101(5) defines "claim" to mean:

>(A) **right to payment**, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, **disputed, undisputed, legal, equitable, secured, or unsecured**; or
>
>(B) **right to an equitable remedy** for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, **disputed, undisputed, secured, or unsecured**.

11 U.S.C. § 101(5)(A) & (B) (emphasis added). While the Court recognizes that the Debtor's *in personam* liability has been discharged in the prior Chapter 7 case, the Debtor has failed to fully address the issue of enforceability of the remaining *in rem* claims with respect to the amounts due on the Second and Third Mortgages.

The US Supreme Court in Johnson v. Home State Bank, 501 U.S. 78, 84 (1991), reaffirmed that an undischarged *in rem* claim remaining after a Chapter 7 discharge is subject to the treatment in a subsequent Chapter 13 case. Johnson, 501 U.S. at 84. Significantly, the Court noted that Congress intended the language in § 101(5) to "adopt the broadest available definition

7

of "claim."" 501 U.S. at 84. As such, the Court stated that a "'right to payment' [means] nothing more nor less than an enforceable obligation . . . ." Id. Accordingly, the Court held that a "mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5)." Id. Therefore, Amboy retains a "right to payment" to the proceeds from the sale of the Debtor's property, even though the Debtor obtained a Chapter 7 discharge on the underlying debt. Id. To put it another way, Amboy's surviving right to foreclose on the Debtor's property can be viewed as a "right to an equitable remedy" for the Debtor's default on the underlying Mortgages. Id. Regardless of how the claim is characterized, the Johnson decision makes it clear that Amboy's surviving mortgage interest constitutes an "enforceable obligation" of the Debtor.

The Supreme Court in Johnson goes as far as to emphasize that while § 502(b)(1) provides that the bankruptcy court "shall determine the amount of [a disputed] claim . . . and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor **and** property of the debtor[,]" § 502(b)(1) nonetheless contemplates that courts must allow the claim if it is enforceable against either the debtor **or** his property. Johnson, 501 U.S. at 85 (emphasis added). The Supreme Court further stated that "§ 102(2) establishes, as a "rule of construction," that the phrase 'claim against the debtor' includes [a] claim against property of the debtor. A fair reading of § 102(2) is that a creditor . . . has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code." 501 U.S. at 85. Consequently, this Court sees no reason to reconsider its previous holding that § 502(b)(1) anticipates the enforceability of an *in rem* claim, such as a remaining mortgage lien for which the underlying obligation has been discharged in a prior a Chapter 7 proceeding. Accordingly, while the Chapter 7 discharge extinguished the Debtor's *in personam* liability, it did not compromise

8

any of Amboy's *in rem* rights against the Debtor's property in the current Chapter 13. Therefore, Amboy's *in rem* claim, while wholly unsecured[3], nonetheless remains enforceable against the Debtor's property under § 502(b)(1).

The Debtor submits that the Court errs by focusing on "claims," and seeks to distinguish "claim" from "debt, noting that § 109(e) refers only to an "individual . . . that owes . . . debts." The Court regards the Debtor's proposed construction of "debt" and "liability" as too narrow. Put simply, if there is a "claim," there is a "debt." See e.g., Laws v. United Mo. Bank, N.A., 188 B.R. 263, 267 (W.D. Mo. 1995) ("The Bankruptcy Code treats "debt" as the converse of a "claim."); see also In re Morton, 43 Bankr. 215, 219-20 (Bankr. E.D. N.Y. 1984) ("Consequently, for purposes of the Bankruptcy Code, if UMB had a claim against KBDC, KBDC owed a debt to UMB."). In other words, "a debt and claim are essentially "flip sides of the same coin." In re Pensignorkay, Inc., 204 B.R. 676, 683 (Bankr. E.D. Pa. 1997). As a result, when a creditor possesses a claim against a debtor, that debtor owes a debt to the creditor. See In re Glance, 487 F.3d 317, 320 (6th Cir. 2007).

With respect to the issue before the Court, it is clear that the equitable rights inherent in an *in rem* claim constitute a "claim" for the purposes of § 101(5). Indeed, the *in rem* claim gives rise to the right to foreclose out a debtor's right of redemption, forcing the debtor to pay the full amount of the claim to redeem the property from the foreclosing *in rem* claimant. In the Court's view, that obligation, which remains after discharge of an *in personam* liability, is certainly a

---

[3] The Court takes issue with the conclusions reached in <u>Shenas</u> and <u>Cavaliere</u>, wherein the courts summarily posited that the surviving *in rem* claims are not enforceable under § 506(a). First, § 506(a) merely fixes the amount of a secured claim based upon valuation of the underlying collateral. Section 506(a) is not a claim disallowance provision. Second, these courts do not explain how *in rem* claims (which by definition are claims against property), can be viewed as "unenforceable against the debtor **or property of the debtor**" so as to be disallowed under § 502(b).

debt. That is, a debtor has the Hobson's choice to either lose their property or pay the full amount of the *in rem* claim.

## IV. CONCLUSION

Therefore, the Court reaffirms its prior holding that Amboy's *in rem* claims for the amounts due under the Second and Third Mortgages constitute enforceable unsecured "debts" owed by the Debtor. In short, the Court denies the Debtor's Motion for Reconsideration for failing to demonstrate that the Court made a clear error of law.

Dated: January 25, 2011

/s/ Michael B. Kaplan
Honorable Michael B. Kaplan
United States Bankruptcy Judge